**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Lawrence J. Rosenfeld, SBN 004426
rosenfeldl@gtlaw.com
Daniel B. Pasternak, SBN 023751
pasternakd@gtlaw.com

**PLANNED PARENTHOOD
FEDERATION OF AMERICA**
1110 VERMONT AVENUE NW, SUITE 300
WASHINGTON, DC  20005
(202) 973-4800

Alice Clapman
(*Pro hac vice* application pending)
alice.clapman@ppfa.org

**ACLU FOUNDATION OF ARIZONA**
77 EAST COLUMBUS STREET, SUITE 205
PHOENIX, ARIZONA  85012
(602) 650-1854

David J. Pochoda, SBN 021979
dpochoda@acluaz.org

**PLANNED PARENTHOOD
FEDERATION OF AMERICA, INC.**
434 WEST 33RD STREET
NEW YORK, NEW YORK 10001
(212) 541-7800

Roger Evans
(*Pro hac vice* application pending)
roger.evans@ppfa.org

**ACLU FOUNDATION**
125 BROAD STREET, 18TH FLOOR
NEW YORK, NEW YORK  10004
(212) 549-2633

Talcott Camp
(*Pro hac vice* application pending)
tcamp@aclu.org
Andrew Beck
(*Pro hac vice* application pending)

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Planned Parenthood Arizona, Inc.; Jane Doe #1; Jane Doe #2, Jane Doe #3,<br><br>Plaintiffs,<br><br>v.<br><br>Tom Betlach, Director, Arizona Health Care Cost Containment System; Tom Horne, Attorney General,<br><br>Defendants. | Civil Action No. _____ |

# COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs Planned Parenthood Arizona ("PPAZ"), Jane Doe #1, Jane Doe #2, and Jane Doe #3, by and through their attorneys, bring this Complaint against the above-named Defendants, their employees, agents, delegatees, and successors in office, and in support thereof state the following:

## INTRODUCTORY STATEMENT

1. This civil action is brought pursuant to 42 U.S.C. § 1983 and the United States Constitution to vindicate rights secured by the federal Medicaid statutes as well as the Supremacy, Due Process, Equal Protection and Contract Clauses of the United States Constitution.

2. On May 4, 2012, Arizona Governor Jan Brewer signed into law Arizona Assembly HB 2800, 2nd Regular Session, 50th Legislature (2012), codified at Ariz. Rev. Stat. § 35-196.05 ("the Act"). The Act disqualifies from eligibility to participate in Arizona's Medicaid program any entity or individual who provides abortions except in narrowly defined circumstances. On or about June 25, 2012, the Arizona Health Care Cost Containment System (AHCCCS), the Medicaid agency in Arizona, issued implementing instructions requiring all AHCCCS medical providers to attest that they do not provide abortions outside the limited circumstances indicated in the Act by August 2, 2012. Failure to provide this attestation will result in the medical provider no longer being eligible to provide and receive reimbursement for medical services to patients enrolled in Medicaid.

3. Plaintiff Planned Parenthood Arizona (PPAZ) has been a provider of Medicaid services in Arizona for decades. Among the many reproductive health medical services that PPAZ provides is abortion, including abortions that will disqualify PPAZ from continued

eligibility to participate in the Medicaid program. Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3 are patients of PPAZ who are enrolled in the Medicaid program.

4.  Plaintiffs seek declaratory and injunctive relief. The Act violates Section 1396a(a)(23) of Title 42 of the United States Code ("Medicaid freedom of choice provision") because, by barring PPAZ from the Medicaid program, it prevents PPAZ's patients from receiving services from the qualified, willing provider of their choice. It violates the Supremacy Clause because it imposes restrictions on eligibility for Medicaid funds that are in excess of and inconsistent with restrictions and requirements established by the federal government for receipt of these funds. The Act imposes an unconstitutional condition in violation of the Due Process Clause because it disqualifies PPAZ from participation in the Medicaid program based on its provision of abortion outside the program. It violates the Equal Protection Clause because it distinguishes, without adequate justification, between family planning providers who provide abortion outside the Medicaid program and those who do not. Finally, the Act violates the Contracts Clause because it impairs PPAZ's contractual relationships with the State's managed care contractors and the contractual obligations contained therein.

5.  The Act is scheduled to take effect on August 2, 2012. Unless enjoined by this Court, the Act will cause significant and irreparable harm to PPAZ and to its Medicaid patients, including Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3, who will lose their provider of choice, will find their family planning services interrupted, and—particularly in certain underserved areas—will be left with few or no alternative providers.

3

PHX 330,343,440_1

## JURISDICTION AND VENUE

6. Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 & 1343.

7. PPAZ's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

8. Venue in this judicial district is proper under 28 U.S.C. § 1391.

## THE PARTIES

**A.     Plaintiffs**

9. Plaintiff PPAZ is a not-for-profit corporation organized under the laws of Arizona. PPAZ brings this action on behalf of itself and its patients.

10. PPAZ, the largest provider of reproductive health services in Arizona, operates 13 health centers throughout the state. For more than twenty years, PPAZ has participated in the Medicaid program, providing medical services to low-income enrollees.

11. Each year, PPAZ provides more than 66,000 patient visits, approximately 3,000 of which are for Medicaid patients. For example, last year, during these visits, PPAZ provided over 9,400 pap smears, over 16,200 tests and treatments for sexually transmitted diseases, over 33,700 breast exams, 136 HPV immunizations, and over 85,400 contraceptives.

12. At five of its 13 health centers, PPAZ also provides abortions.

13. Plaintiffs Jane Doe #1 and Jane Doe #2 are a mother and daughter who are Arizona residents and Medicaid patients. They have sought family planning services at

PPAZ's Yuma Center and desire to continue to do so. They are due back for their next appointments in September 2012. They sue on their own behalf.

14. Plaintiff Jane Doe #3, an Arizona resident and Medicaid patient, has been a patient of PPAZ since 1997. She regularly seeks family planning services at PPAZ's Flagstaff Center and desires to continue to do so. She is due back for her next appointment in September 2012. She sues on her own behalf.

15. Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3 appear anonymously because of the private and personal nature of the medical care that they receive at PPAZ, and their desire not to have that information become public in order for them to assert their legal rights.

**B.  Defendants**

16. Defendant Tom Betlach is the Director of the Arizona Health Care Cost Containment System (AHCCCS), the agency that administers the state Medicaid program, and which, in the absence of the Act, would disburse the funds at issue to PPAZ through the managed care contractors with which PPAZ currently contracts. Defendant Betlach is sued in his official capacity.

17. Defendant Tom Horne is the Attorney General of Arizona, and is authorized by the Act to bring an action to enforce its terms. Defendant Horne is sued in his official capacity.

<u>THE ACT AND ITS IMPLEMENTATION</u>

18. The Act provides that "[t]his state or any political subdivision of this state may not enter into a contract with or make a grant to any person that performs nonfederally

5

qualified abortions or maintains or operates a facility where nonfederally qualified abortions are performed for the provision of family planning services." The Act defines "nonfederally qualified abortion" as an "abortion that does not meet the requirements for federal reimbursement under Title XIX of the Social Security Act," i.e., any abortion except where the pregnancy is the result of rape or incest or threatens the life of the patient. Ariz. Rev. Stat. § 35-196.05(B).

19.  On June 27, 2012, PPAZ and many of its physicians received a letter from AHCCCS requiring PPAZ to attest that, as of August 2, 2012, it will cease providing abortions except in narrow circumstances set forth in the enclosed attestation. These circumstances are where the pregnancy is a result of rape or incest, where the pregnancy endangers the woman's life, and for Medicaid patients only, certain situations where the pregnancy endangers the woman's health.  The letter makes clear that, unless PPAZ and its physicians limit their abortion services to these narrow circumstances, AHCCCS will immediately terminate their provider status and block all further Medicaid reimbursements to PPAZ. A true and correct copy of this letter is attached and incorporated herein as Exhibit 1.

## THE MEDICAID PROGRAM

**1. The Medicaid Statute**

20.  The Medicaid program, established under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq.*, pays for medical care provided to eligible needy people. A State may elect whether or not to participate; if it chooses to do so, it must comply with the requirements imposed by the Medicaid statute and by the Secretary of the U.S. Department of Health and Human Services ("HHS") in her administration of Medicaid. *See generally* 42

U.S.C. § 1396a(a)(1)-(83).

21. To receive federal funding, a participating State must develop a "plan for medical assistance" and submit it to the Secretary of HHS for approval. 42 U.S.C. § 1396a(a).

22. Among other requirements, the State plan must provide that: "[A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A).

23. Congress has singled out family planning services for special additional protections to ensure freedom of choice, specifically providing that, with respect to these services and with certain limited exceptions not applicable here, "enrollment of an individual eligible for medical assistance in a primary care case-management system . . ., a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services." § 1396a(a)(23)(B).

24. For decades, Congress has attached a rider to HHS's appropriations blocking the use of Medicaid funds for abortion, except in limited circumstances. *See, most recently*, Consolidated Appropriations Act of 2012, Pub. L. No. 112-74, §§ 613-14, 125 Stat. 786, 925-26 (2011). However, the Medicaid Act does not prohibit entities that provide abortion services from receiving Medicaid funds.

**2. Implementation of the Medicaid Act**

25. For decades, HHS has repeatedly interpreted the "qualified" language in Section 1396a(a)(23) to prohibit states from denying access to a provider for reasons unrelated to the

ability of that provider to perform Medicaid-covered services or to properly bill for those services, including reasons such as the scope of the medical services that the provider chooses to offer.

26. Most recently, the Centers for Medicare and Medicaid Services ("CMS") rejected an Indiana plan that, just like the Arizona Act, barred state agencies from contracting with or making grants to any entities that perform abortion. Specifically, CMS found that Indiana's plan violated the Medicaid freedom of choice provision.

27. HHS has explained that "[t]he purpose of the free choice provision is to allow [Medicaid] recipients the same opportunities to choose among available providers of covered health care and services as are normally offered to the general population." State Medicaid Manual § 2100, CMS Manuals Publication #45.

28. Consistent with this understanding, HHS has a long history of rejecting state plans to limit the type of provider that can provide particular services. *See, e.g.*, 53 Fed. Reg. 8699 (Mar. 16, 1988) (rejecting plan that would limit providers to "private nonprofit" organizations).

**3. PPAZ's status as a provider in Arizona's Medicaid Program**

29. Arizona does not directly reimburse providers. Rather, it contracts with private managed care providers (collectively, "AHCCCS managed care contractors"), who in turn contract with medical care providers to reimburse those providers for providing care to Medicaid beneficiaries who are enrolled with the respective managed care contractors. PPAZ has entered into fee-for-service agreements with several of the AHCCCS managed care contractors. Under the terms of its contracts, PPAZ agreed to provide health and medical

services to the contractors' members, and the contractor agreed to reimburse PPAZ for these services. PPAZ must maintain its provider participation agreement with AHCCCS in order to be reimbursed for providing services to the AHCCCS managed care contractors.

30. AHCCCS re-credentials a provider every three years. AHCCCS has re-credentialed PPAZ, without break or incident, at least since 1991.

## THE IMPACT OF THE ACT ON PPAZ AND ITS PATIENTS

31. Unless the Act is enjoined or unless PPAZ were to cease providing abortions (except under the narrow circumstances allowed under the Medicaid program), it will no longer be able to provide reproductive healthcare services to approximately 3,000 Medicaid patients. PPAZ will lose the revenues from these services, which were approximately $350,000 over the past 12 months.

32. For PPAZ patients, including Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3, implementation of the Act will deprive them of access to the high-quality, specialized care that PPAZ uniquely provides.

33. Women insured through Medicaid choose PPAZ as their reproductive healthcare provider for a number of reasons. To begin with, four of PPAZ's 13 medical centers are in areas that the federal government has classified as "medically underserved" based on four variables: 1) the ratio of primary medical care physicians per 1,000 population, 2) the infant mortality rate, 3) the percentage of the population with incomes below the poverty level, and 4) the percentage of the population age 65 or over. These are PPAZ's Flagstaff Health Center, Maryvale Health Center, Yavapai Health Center, and Tempe Health Center. Five of PPAZ's centers are in areas classified as "low provider," a designation based on similar

criteria. *See* Shortage Area Database, Health Resources and Services Administration, U.S. Dep't of Health and Human Services, *available at* http://datawarehouse.hrsa.gov/GeoAdvisor /ShortageDesignationAdvisor.aspx (last accessed June 29, 2012); Guidelines for MUA and MUP Designation U.S. Dep't of Health and Human Services, *available at* http://bhpr.hrsa.gov/shortage/muaps/index.html (last accessed July 10, 2012).

34. Because these areas are generally medically underserved to begin with, and because many providers are unwilling to provide services at Arizona's low reimbursement rates, many of the Medicaid patients in these areas have few or no alternative options and will find it difficult or impossible to access reproductive health care services if the Act goes into effect. Those who are unable to find an adequate alternative will not receive the medical services they need, an effect that would lead to higher rates of unintended pregnancies and transmission of sexual diseases.

35. Even for patients who have an alternative provider, the Act will deny them access to the high-quality, specialized care that PPAZ uniquely provides. Patients insured through Medicaid choose PPAZ based on a number of factors that are generally not available at other providers. With its evidence-based practices and up-to-date technology, PPAZ is known as a provider of high-quality medical care. Many individuals who receive other health care through community care providers or other Medicaid providers choose to have a separate provider such as PPAZ for their reproductive health care because they are concerned about their privacy and because they fear being judged by other providers.

36. In addition, many low-income patients have unique scheduling constraints

because they are juggling inflexible work schedules, childcare obligations, and lack of childcare resources. To ensure that these patients have access to family planning services, PPAZ offers extended hours. One PPAZ center is open seven days a week. All of PPAZ's urban centers are open at least one night per week until seven or eight, and five of PPAZ's centers have Saturday hours. In addition, PPAZ spaces patient appointments so as to minimize wait times. Other providers of similar services often require long waits before patients can be seen.

37. Medicaid patients generally have a hard time finding family planning and related reproductive health care services in Arizona. Because Arizona reimburses providers at exceptionally low levels, many health care providers refuse to take Medicaid. For example, Medicaid reimburses PPAZ at 45% *less* than the cost PPAZ incurs by providing the services.

38. One group at particular risk of losing necessary—and in some cases life-saving—services is women who are legally entitled to a Medicaid-funded abortion because their pregnancy either is the result of rape or incest or poses certain risks to their health or life. On information and belief, there are few, if any, abortion providers in Arizona who will be able to continue participating in Medicaid if the Act goes into effect. Thus, should the Act take effect, Arizona women on Medicaid who otherwise would have been able to obtain a Medicaid-funded abortion will no longer be able to do so because those physicians will have been disqualified from Medicaid.

39. Plaintiff Jane Doe #1 is a single mother of four children (one of them Jane Doe #2). They live in Yuma, Arizona, a "low provider area." She works full time as a restaurant

manager. Plaintiff Jane Doe #3 lives in Flagstaff, Arizona, a "medically underserved" area. She has a longstanding relationship with PPAZ as her main provider for family planning and other reproductive health services, and chooses to receive her care at PPAZ for any services Medicaid covers. She is a single parent, juggling work, school, and childcare obligations. All three individual Plaintiffs rely on PPAZ as the place they can turn to for urgent care and for prompt, efficient services. All three patients are due back at Planned Parenthood for further treatment in September 2012. If the Act goes into effect, they will be prevented from receiving services from their provider of choice, will have their health care interrupted, and may encounter difficulties finding alternative care.

## CLAIMS FOR RELIEF

### CLAIM I – MEDICAID ACT

40. Plaintiffs hereby incorporate Paragraphs 1 through 39 above.

41. The Act violates Section 1396a(a)(23) of Title 42 of the United States Code by denying PPAZ's patients, including the Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3, the right to choose any willing, qualified healthcare provider under the Medicaid program.

42. Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act illegal and preliminarily and permanently enjoin enforcement of the Act.

### CLAIM II – SUPREMACY CLAUSE

43. Plaintiffs hereby incorporate Paragraphs 1 through 39 above.

44. The Act violates the Supremacy Clause of the United States Constitution by

placing impermissible eligibility restrictions on federal funds that are in excess of and inconsistent with those established by the federal government.

45. Therefore, pursuant to 42 U.S.C. § 1983, as well as directly pursuant to the Supremacy Clause, this Court should declare the Act to be unconstitutional and should preliminarily and permanently enjoin enforcement of the Act.

### CLAIM III – FOURTEENTH AMENDMENT DUE PROCESS

46. Plaintiffs hereby incorporate Paragraphs 1 through 39 above.

47. The Act imposes an unconstitutional condition on PPAZ's eligibility to participate in Medicaid because it disqualifies PPAZ from Medicaid based on its provision of abortion services outside the Medicaid program.

48. Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act to be unconstitutional and should preliminarily and permanently enjoin enforcement of the Act.

### CLAIM IV – FOURTEENTH AMENDMENT EQUAL PROTECTION

49. Plaintiffs hereby incorporate Paragraphs 1 through 39 above.

50. The Act violates PPAZ's Fourteenth Amendment rights by singling out abortion providers for unfavorable treatment without adequate justification.

51. Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act to be unconstitutional and should preliminarily and permanently enjoin enforcement of the Act.

### CLAIM V – CONTRACTS CLAUSE

52. Plaintiffs hereby incorporate Paragraphs 1 through 39 above.

53. The Act violates PPAZ's rights under the Contracts Clause of the United States Constitution by substantially impairing its contractual relationships with AHCCCS managed

PHX 330,343,440_1

care contractors without furthering a significant and legitimate public purpose.

54. Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act to be unconstitutional and should preliminarily and permanently enjoin enforcement of the Act.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

55. Issue a declaratory judgment that the Act violates the Medicaid Act and is therefore void and of no effect;

56. Issue a declaratory judgment that the Act violates the Supremacy Clause of the United States Constitution and is therefore void and of no effect;

57. Issue a declaratory judgment that the Act violates the Due Process Clause of the Fourteenth Amendment and is therefore void and of no effect;

58. Issue a declaratory judgment that the Act violates the Equal Protection Clause of the Fourteenth Amendment and is therefore void and of no effect;

59. Issue a declaratory judgment that the Act violates the Contract Clause of the Constitution and is therefore void and of no effect;

60. Issue preliminary and permanent injunctive relief, without bond, restraining the enforcement, operation, and execution of the Act by enjoining Defendants, their agents, employees, appointees, delegates, or successors from enforcing, threatening to enforce, or otherwise applying the provisions of the Act;

61. Grant Plaintiff attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

62. Grant such further relief as this Court deems just and proper.

Dated: July 16, 2012

| | |
|---|---|
| Roger Evans<br>(*Pro hac vice* application pending)<br>PLANNED PARENTHOOD<br>FEDERATION OF AMERICA<br>434 West 33rd Street<br>New York, New York 10001<br>(212) 261-4708<br>roger.evans@ppfa.org<br><br>Alice Clapman<br>(*Pro hac vice* application pending)<br>PLANNED PARENTHOOD<br>FEDERATION OF AMERICA<br>1110 Vermont Avenue NW, Suite 300<br>Washington, DC 20005<br>(202) 973-4800<br>alice.clapman@ppfa.org<br><br>Talcott Camp<br>(*Pro hac vice* application pending)<br>Andrew Beck<br>(*Pro hac vice* application pending)<br>ACLU FOUNDATION<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2633<br>tcamp@aclu.org<br><br>*Attorneys for Plaintiffs* | /s/ Lawrence J. Rosenfeld<br>Lawrence J. Rosenfeld<br>AZ Bar No. 004426<br>rosenfeldl@gtlaw.com<br>Daniel B. Pasternak<br>AZ Bar No. 023751<br>pasternakd@gtlaw.com<br>Greenberg Traurig<br>2375 East Camelback Road, Suite 700<br>Phoenix, AZ 85016<br><br>Daniel J. Pochoda<br>AZ Bar No. 021979<br>ACLU FOUNDATION OF ARIZONA<br>77 E. Columbus Street, Suite 205<br>Phoenix, AZ  85012<br>(602) 650-1854<br>dpochoda@acluaz.org |

PHX 330,343,440_1