STUART F. DELERY
Acting Assistant Attorney General
JOHN S. LEONARDO
United States Attorney
District of Arizona
SHEILA M. LIEBER
Deputy Director,
Federal Programs Branch
TAMRA T. MOORE
ETHAN P. DAVIS
JOSEPH MEAD
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20001
Tel: (202) 305-8546/ Fax: (202) 305-8517
E-mail: Joseph.W.Mead@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Planned Parenthood Arizona, Inc.; Jane Doe #1; Jane Doe #2; Jane Doe #3, <br><br> Plaintiffs, <br><br> v. <br><br> Thomas Betlach, Director of the Arizona Health Care Cost Containment System, <br><br> Defendant. | No. CV-12-01533-PHX-NVW <br><br> **STATEMENT OF INTEREST OF THE UNITED STATES** |

0

# STATEMENT OF INTEREST OF THE UNITED STATES[1]

The United States has strong interests in the proper operation of the Medicaid Program—which provides health care coverage to more than fifty million very low income people who otherwise would likely be unable to afford health care services—and in ensuring that the States administer their federally-subsidized Medicaid programs in a manner that is consistent with the Medicaid statute.  This case is about whether an Arizona statute that does not allow entities that perform abortions to participate in Medicaid (even as providers of non-abortion services) violates the Medicaid statute's free choice of providers provision, 42 U.S.C. § 1396a(a)(23).  That provision grants Medicaid beneficiaries the right to choose to receive covered services from any qualified provider that is willing to perform the services, free of interference from the State.  Because the Arizona law violates the Medicaid statute's free choice of providers provision, and because the public interest strongly supports preserving the free choice of providers that Congress conferred on beneficiaries, this Court should enjoin implementation of the Arizona law with respect to the provision of Medicaid services.

First, by precluding payment for Medicaid services furnished by entities that provide legal abortion services outside the scope of their Medicaid practices and by refusing to allow these entities to participate in Medicaid as providers of covered services (like routine gynecological examinations or family planning services),[2] the Arizona law denies beneficiaries the right to choose any qualified provider in violation of 42 U.S.C. § 1396a(a)(23).  The United States Department of Health and Human Services (HHS) has long taken the position that a State's criteria for qualification must be related to the provider's ability to render services and to properly bill for those services. *See Planned*

---

[1] This Statement of Interest is submitted under 28 U.S.C. § 517, which allows "any officer of the Department of Justice . . . to attend to the interests of the United States in a suit pending in a court of the United States." *See Rosado v. Wyman*, 397 U.S. 397, 406-07 (1970) ("Whenever possible the district courts should obtain the views of [HHS].").

[2] Under federal law, federal funds may be used for abortion services only in cases of rape, incest, or where the life of the woman would be endangered. *See* Pub. L. No. 112-74, §§ 613-14, 125 Stat. 786, 926 (2011).

*Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 794 F. Supp. 2d 892, 905 (S.D. Ind. 2011) (agreeing with HHS's interpretation and enjoining similar State law in Indiana), *appeal pending*, Case No. 11–2464 (7th Cir.). The agency's interpretation of the complex and technical Medicaid statute is entitled to deference. And it is in any event the only reasonable reading of the statute, as Arizona's interpretation would allow States to eliminate the free choice of providers that Congress provided for beneficiaries.

Second, the public interest weighs in favor of granting preliminary relief. The irreparable harm that Doe plaintiffs have already identified—their inability to choose from among all qualified providers of medical services—would likewise fall on all Arizona Medicaid beneficiaries if the Arizona statute is given effect. Moreover, without injunctive relief, Arizona will continue to violate the Medicaid statute, consistent with the State's incorrect view it may lawfully operate a non-compliant Medicaid program. Def.'s Opp. at 11-12, ECF No. 43. But Medicaid requirements are mandatory on States such as Arizona that choose to accept Medicaid funding, and Arizona is not free to violate federal law or disregard its obligations to the beneficiaries of the Medicaid program.

## BACKGROUND

### I.  The Medicaid Program

The Medicaid program, established under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, pays for medical care provided to eligible needy people. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). A State may elect whether or not to participate; if it chooses to do so, it must comply with the requirements imposed by the Medicaid statute and by the Secretary of HHS (the Secretary) in her administration of Medicaid. *See generally* 42 U.S.C. § 1396a(a)(1)-(83); *Wilder*, 496 U.S. at 502.

To receive federal funding, a participating state must develop a "plan for medical assistance" and submit it to the Secretary for approval. 42 U.S.C. § 1396a(a); *Wilder*, 496 U.S. at 502. Among other requirements, the State plan "must" provide that beneficiaries have the freedom to receive services from the qualified and willing provider of their choice. 42 U.S.C. § 1396a(a)(23). This free choice of providers provision is

broken into two subparagraphs:

> [Subparagraph (A):] [A]ny individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services . . .
> [Subparagraph (B):] [A]n enrollment of an individual eligible for medical assistance in a primary care case-management system . . . a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive [family planning services].

42 U.S.C. § 1396a(a)(23). Thus, in Subparagraph (B), Congress provided special protection for free choice of providers of family planning services, even in the context of managed care, where free choice of providers otherwise can be limited by a State. 42 U.S.C. § 1396a(a)(23)(B); *see also* 42 U.S.C. § 1396n(b) (providing that Secretary may waive free choice of providers in some circumstances to permit a State to set up a managed care delivery system, but that "[n]o waiver under this subsection may restrict the choice of the individual" in receiving family planning services). There is a narrow exception to freedom of choice that permits a State to establish "reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2). As explained in more detail below, HHS has long taken the position that the qualification-related standards must be related to the ability of the providers to perform services or to properly bill for those services.

The statute also contains administrative enforcement mechanisms. HHS, through the Centers for Medicare & Medicaid Services (CMS), reviews the State's plan including any plan amendments and determines whether the State plan complies with the statutory and regulatory requirements. *See* 42 U.S.C. § 1316(a)(1), (b).[3] Moreover, if the State

---

[3] HHS's disapproval of a state plan or any plan amendment is final absent further action by the state. Under the Medicaid statute, however, the state can seek reconsideration of the Secretary's disapproval decision, and then the Secretary is required to hold a hearing. 42 U.S.C. § 1316(a)(2). If the state remains dissatisfied with the Secretary's determination upon reconsideration, the state may seek judicial review in the court of appeals for the circuit in which the state is located. *Id.* § 1316(a)(3); 42 C.F.R. § 430.18.

does not act in compliance with an approved plan, or if an approved plan no longer complies with the requirements of the Act, the Secretary may initiate an enforcement action. *See* 42 U.S.C. § 1396c; 42 C.F.R. § 430.35. In addition, HHS itself may seek injunctive relief to compel compliance with provisions of the Act. *See, e.g.*, *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). Finally, as the Supreme Court has held, a private cause of action may be available under Section 1983 to enforce certain provisions of the Act, *see Wilder*, 496 U.S. at 520-24, and indeed, courts have held that the free choice of providers provision at issue here is privately enforceable via Section 1983. *See Harris v. Olszewski*, 442 F.3d 456, 460-64 (6th Cir. 2006) (Sutton, J.); *see also Ball v. Rodgers*, 492 F.3d 1094, 1103-1117 (9th Cir. 2007) (similar provision).

The Secretary of HHS also may approve a demonstration project for a State when, "in the judgment of the Secretary," the project "is likely to assist in promoting the objectives" of specified Social Security Act programs, including the Medicaid program. 42 U.S.C. § 1315(a).[4] This includes the authority to waive certain federal requirements "to the extent and for the period [the Secretary] finds necessary." 42 U.S.C. § 1315(a)(1). If the Secretary exercises her discretion to approve a demonstration project, all requirements of federal law and the State plan not specifically waived remain in effect.

## II. Arizona's Medicaid Program

Arizona participates in Medicaid through an approved State plan and a demonstration project, that together authorize the Arizona Health Care Cost Containment System (AHCCCS), which provides medical assistance to eligible individuals through a

---

[4] As part of her general authority to approve demonstration projects, the Secretary may exercise two distinct types of authority. First, the Secretary may waive compliance with certain requirements that ordinarily would govern the program. *See* 42 U.S.C. §1315(a)(1) ("waiver authority"). Second, the Secretary may provide federal financial assistance for state expenditures that would otherwise not be eligible for such assistance, which allows, among other things, a State to receive federal reimbursement for providing health benefits to an "expansion population" of individuals who are not otherwise eligible for benefits under Medicaid. *See* 42 U.S.C. § 1315(a)(2)(A) ("expenditure authority"). For Arizona, the Secretary has exercised her discretion under both authorities.

4

managed care system. In order to allow Arizona to use a managed care system, the Secretary (acting through CMS) waived Subparagraph (A) of the free choice of providers provision only "[t]o the extent necessary to enable the State to restrict freedom of choice of providers through mandatory enrollment of eligible individuals in managed care organizations and/or Prepaid Inpatient Health Plans."[5] CMS Waiver List 3, *available at* http://www.azahcccs.gov/reporting/Downloads/1115waiver/1115WaiverApprovalPkg.pdf. Moreover, the Secretary did not waive Subparagraph (B)'s requirement that, even in the context of managed care organizations when free choice of providers otherwise may be limited by a State, free choice of providers still must be provided to beneficiaries who seek family planning services. 42 U.S.C. § 1396a(a)(23)(B).[6] Arizona has not sought permission from CMS —through the submission of a State plan amendment or a modification to its demonstration project—to implement its new restriction on free choice of providers. However, it appears to CMS that the application of Ariz. Rev. Stat. § 35-196.05(B) to Medicaid violates the State's obligations under Medicaid, Arizona's approved State plan, and the terms of its demonstration project.

## ARGUMENT

The motion for a preliminary injunction should be granted because plaintiffs are likely to prevail on their claim that Arizona's law conflicts with the freedom of choice provision. Congress adopted the free choice of providers provision to allow beneficiaries to receive services from the provider of their choice, and then carefully delineated exceptions where States may interfere with this right, none of which are implicated here. Arizona's view that it retains broad authority to evade this statutory mandate is unpersuasive, as it would deprive the free choice of providers provision of all meaning. Moreover, HHS has long required—even decades before Arizona's law was passed—that

---

[5] Subparagraph (A) of the free choice of providers provision is also waived "[t]o the extent necessary to enable the State to impose a limitation on providers or charges associated with non-covered activities."
[6] The United States pays 90 percent of the cost of family planning services provided to beneficiaries, while Arizona pays only 10 percent. 42 U.S.C. § 1396b(a)(5).

a State's qualification standards be related to providers' ability to render services or properly bill for them, and has disapproved requests from other States such as Indiana that would preclude providers from participating in the Medicaid program based on the scope of their non-Medicaid services.  This view is based on an eminently reasonable interpretation of the Medicaid statute and is entitled to deference.   Finally, the public interest also weighs in favor of injunctive relief.

**I.      Arizona's law violates Medicaid's Free Choice of Providers Requirement**

With the free choice of provider provision, Congress mandated that States allow Medicaid beneficiaries generally to choose among qualified medical providers without interference from the State.  Arizona, however, claims that it has essentially limitless authority to restrict freedom of choice by determining that a provider is "unqualified" based on the scope—rather than the quality—of its services.  But the State's authority to ensure that providers provide services effectively and safely does not give the State carte blanche to eliminate providers for any reason at all.  Any claim to such authority conflicts with the statutory scheme established by Congress and the Secretary's longstanding interpretation of the free choice of providers provision, to which this Court owes deference.

**A.   Arizona's Law Conflicts with the Free Choice of Providers Provision**

The statutory scheme illustrates that the free choice of providers provision is meant to provide real, not illusory, protection for Medicaid beneficiaries against State interference in their choice of provider.  In order to "require States to offer" beneficiaries the "freedom in their choice of medical institution or medical practitioner," H.R. Rep. No. 90-544, at 122 (1967), S. Rep. No. 90-744, at 183 (1967), Congress included the free choice of providers provision in a list of requirements that States "must" meet to obtain Medicaid dollars.  *See* 42 U.S.C. § 1396a(a).[7]  The provision is not only mandatory, but it

---

[7] Arizona's argument that "[b]y its terms, the Medicaid Act imposes affirmative legal obligations only on the Secretary," Def.'s Opp. to PI at 11, is therefore flatly contradicted by the plain text of the statute.  42 U.S.C. § 1396a ("A State plan for medical assistance *must. . .*" (emphasis added)).   Moreover, Arizona is also simply incorrect that decisions

1  is written in clear contemplation of the rights of individual beneficiaries, *see* 42 U.S.C. §
2  1396a(a)(23) (providing that "any individual . . . may obtain" services), rather than the
3  State.  *Cf. Harris*, 442 F.3d at 461 ("[T]he statute uses the kind of 'individually focused
4  terminology' that 'unambiguously confer[s]' an 'individual entitlement' under the law.").
5       Congress singled out free choice of providers for family planning services—
6  precisely the services provided by the plaintiff provider—for an additional layer of
7  protection.  A State may offer beneficiaries the option of participating in a managed care
8  organization where provider choice is restricted to participating providers, and, with the
9  Secretary's permission, a State may make enrollment in a managed care organization
10 mandatory.  42 U.S.C. § 1396n(b)(1).  But even in the managed care setting, the State
11 "shall not restrict the choice of the qualified person from whom the individual may
12 receive" family planning services.  42 U.S.C. § 1396a(a)(23)(B); *see also* 42 U.S.C. §
13 1396n(b) (providing that "[n]o waiver under [§ 1396n]  may restrict the choice of the
14 individual in receiving" family planning services).  Thus, Congress clearly intended "that
15 there be no restrictions on access by Medicaid beneficiaries to the family planning
16 providers of their choice, whether or not that restriction occurs in the context of a
17 freedom-of-choice waiver." H.R. Rep. No. 100-391, at 540 (1987).
18      From this sweeping mandate, Congress carefully delineated several narrow
19 exceptions when a beneficiary might not be able to obtain services from the provider of
20 his or her choice.  For example, the statute provides that a State may deny payment to an
21 individual convicted of a felony.  42 U.S.C. § 1396a(a)(23).  Or, a State may—if the

---

22 from other circuits interpreting Title X of the Social Security Act "foreclose[]" any
23 preemption argument in the context of Medicaid (which is Title XIX).  *See* Br. at 19.
   Unlike Medicaid, Title X does not have an explicit freedom of choice provision.  Further,
24 the Fifth Circuit case cited by the State actually held that Texas's law *would* be
25 preempted by Title X *unless* Texas offered the plaintiffs an ability to form affiliates as "a
   relatively empty formalism."  *Planned Parenthood of Houston & S.E. Tex. v. Sanchez*,
26 403 F.3d 324, 342 (5th Cir. 2005).  Similarly misplaced is Arizona's reliance on *Rust v.*
27 *Sullivan*, 500 U.S. 173 (1991), which upheld against a constitutional challenge an
   agency's regulation implementing a statutory mandate applicable to Title X only (which,
28 again, lacks similar explicit protection for free choice of providers).  *Id.* at 184.

7

Secretary allows it—limit beneficiary choice to providers that meet certain "reimbursement, quality, and utilization standards," *but* only so long as those standards "are consistent with access, quality, and efficient and economic provision of covered care and services" and "such restriction does not discriminate among classes of providers on grounds unrelated to their demonstrated effectiveness and efficiency in providing those services." 42 U.S.C. § 1396n(b)(4). Or, "a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation" in Medicare, such as conviction for a crime related to the program or to patient neglect or abuse. 42 U.S.C. § 1396a(p)(1); 42 U.S.C. § 1320a-7.[8]

Arizona does not argue that its restriction on free choice of providers falls within any of these carefully constructed exceptions. Instead, Arizona argues that the right of beneficiaries to receive covered services from "any" provider that is "*qualified* to perform the service or services required,*"* 42 U.S.C. § 1396a(a)(23) (emphasis added), authorizes the State to set provider "qualifications" for reasons unrelated to providers' ability to "*perform* [covered] service[s]" and properly bill for them. 42 U.S.C. § 1396a(a)(23) (emphasis added). This is not what the statute says, and it is contrary to Congress's plain intent to allow States the authority to "set certain standards for the provision of care." H.R. Rep. No. 90-544, at 122 (1967), S. Rep. No. 90-744, at 183 (1967).[9]

---

[8] Arizona asserts that 42 C.F.R. § 1001.1501—which permits the HHS Office of Inspector General (not States) to exclude providers who have defaulted on loan repayments—demonstrates that States have unfettered authority to disqualify for reasons other than ability to provide services and properly bill for them. Br. at 14. However, the cited regulation implements a specific grant of statutory authority only to the Secretary that permits the Secretary to exclude any individual "who the Secretary determines is in default on repayments of scholarship obligations or loans in connection with health professions education[.]" 42 U.S.C. § 1320a-7(b)(14).

[9] An indication that the State's restriction is not related to a qualification to provide the services at issue is that it applies only to providers who contract with the State. The State may impose licensing requirements or regulate the practice of medicine generally, and to that extent limit who is qualified under State law to perform services. But by limiting its restriction to Medicaid providers, that plainly is not what the State has done here.

8

1          Indeed, Arizona's argument would render the free choice of providers provision—
2   and the narrow exceptions that Congress carved out from the provision—a nullity, as
3   long as a State characterizes its exclusion of providers as a "qualification." Under
4   Arizona's interpretation, a State could always characterize a decision to restrict a
5   beneficiary's right to choose a particular provider as a decision instead to "disqualify"
6   that provider. Arizona's interpretation therefore "violates the established principle that a
7   court should give effect, if possible, to every clause and word of a statute." *Moskal v.*
8   *United States*, 498 U.S. 103, 109 (1990). It is not plausible that Congress went to the
9   effort to mandate that states provide beneficiaries with the right to select their providers
10  (particularly and expressly in the context of family planning services), carefully defined
11  the exceptions to this rule, but then left States essentially unlimited residual authority to
12  curtail beneficiary choice. *See Planned Parenthood of Ind.*, 794 F. Supp. 2d at 908
13  ("[T]he Medicaid statute itself supports the view that states do not have carte blanche to
14  expel otherwise competent Medicaid providers.").
15         Not only is Arizona's interpretation implausible on its face, it is impossible to
16  reconcile with the cases that have interpreted the provision. Consider, for example,
17  *Chisholm v. Hood*, which involved a successful challenge under the free choice of
18  provider provision to "Louisiana's policy of limiting Medicaid eligible disabled children
19  to occupational, speech, and audiological services provided by their resident school
20  board." 110 F. Supp. 2d 499, 500 (E.D. La. 2000). Arizona agrees that the policy at
21  issue in *Chisholm* violated the free choice of providers provision, *see* Def.'s Opp. to PI at
22  17, but, under Arizona's view, *Chisholm* would have been decided differently if
23  Louisiana instead had characterized its policy as "disqualifying" all non-school-based
24  providers of services from offering services to children with disabilities.[10]

---

[10] Trying to avoid the absurd consequences of its interpretation, Arizona invents a new rule—untethered to any statutory text—that the free choice of providers provision is satisfied so long as the State's restriction does not "eliminate[] all or virtually all choice whatsoever." Def.'s Opp. to PI at 17. But the free choice of providers provision is violated whenever any beneficiary is denied her right to receive covered Medicaid

9

Nor does 42 U.S.C. § 1396a(p)(1), also cited by Arizona, change the result here. That section provides: "In addition to any other authority, a State may exclude any individual or entity [from participating in its Medicaid program] for any reason for which the Secretary could exclude the individual or entity from participation in [Medicare]." 42 U.S.C. § 1396a(p)(1). Relying on language in a Senate Report,[11] the First Circuit—in a case involving Puerto Rico, which is expressly *exempt* from the free choice of providers provision, 42 U.S.C. § 1396a(a)(23)—stated that "this 'any other authority' language was intended to permit a state to exclude an entity from its Medicaid program for any reason established by state law." *First Med. Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 53 (1st Cir. 2007). Ignoring the differences between "qualifications" and "exclusions," *see* 42 C.F.R. §§ 1001.2002, 1002.212 (requiring notice and appeal rights for excluded providers), Arizona insists that this language authorizes the State to establish any qualification standards of its choosing, unrelated to the provider's ability to render competent and skilled professional services to patients. But Arizona reads the Senate Report too broadly. As the introductory paragraph explains, "[t]he basic purpose of the Committee bill is to improve the ability of the Secretary . . . to protect . . . Medicaid . . . programs from fraud and abuse, and to protect the beneficiaries of those programs from incompetent practitioners and from inappropriate or inadequate care." S. Rep. No. 100-109, at 1. Section 1396a(p)(1)'s authorization to States to exclude providers to prevent "fraud and abuse" and to protect beneficiaries from "incompetent practitioners and from inappropriate or inadequate care," does not silently abrogate the statutory free choice of provider of section 1396a(a)(23). Under Arizona's "blank check" interpretation, Section

---

services from "*any*" qualified provider of her choosing; the existence of other qualified providers in the State is irrelevant.

[11] *See* S. Rep. No. 100-109, at 20 (1987) ("The Committee bill clarifies current Medicaid Law by expressly granting States the authority to exclude individuals or entities from participation in their Medicaid programs for any of the reasons that constitutes a basis for an exclusion from Medicare . . . This provision is not intended to preclude a State from establishing, under State law, any other bases for excluding individuals or entities from its Medicaid program.").

1396a(p)(1)'s authorization for States to exclude entities from their Medicaid programs "for any reason for which the Secretary could exclude the individual or entity from participation in [Medicare]" would be superfluous, as States would already possess this authority under the "in addition to any other authority" clause. 42 U.S.C. § 1396a(p)(1). Indeed, Section 1396a(p)(1) undermines Arizona's position, as the Secretary could not exclude an organization from participating in Medicare on the basis that Arizona asserts here as its basis for disqualifying the plaintiff provider (that a provider offers a specific non-covered service apart from its provision of covered services).[12]

The other decisions cited by Arizona, Def.'s Opp. to PI at 14, involved the exclusion from Medicaid of physicians involved in malpractice or providers under criminal investigation. *See Triant v. Perales*, 491 N.Y.S.2d 486, 488 (N.Y. App. Div. 1985) (physician was barred from the Medicaid program in light of "monumental deficiencies" in record-keeping that left him unable to recall the reason for prescribing medication, ordering tests, or referring Medicaid patients to specialists); *Guzman v. Shewry*, 552 F.3d 941 (9th Cir. 2008) (physician was under investigation for Medicaid fraud); *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 579 (2d Cir. 1989) (provider was indicted for a felony offense that the State determined "relat[ed] to the furnishing or billing for medical care, services or supplies"). None of these cases stands for the proposition that a State may disqualify or exclude a class of providers for reasons unrelated to their ability to provide services and properly bill for them [13]

---

[12] Arizona also relies on the Second Circuit's decision in *Kelly Kare v. O'Rourke*, 930 F.2d 170, 172 (2d Cir. 1991), but, there, the court of appeals was addressing a constitutional argument—not a statutory argument under the free choice of providers provision. Nothing in the opinion suggests that the agency had authorized New York to design provider "qualifications" wholly unrelated to the ability of providers to perform services or bill properly; indeed, the court indicated that Kelly Kare remained a "qualified" provider able to contract with other social services districts. *Id.* at 176.

[13] To address its perception that Medicaid reimbursement is used as an "indirectly subsidy" of constitutionally-protected behavior engaged in outside of the Medicaid program, the State could review its payment rates to ensure that payments do not exceed

11

### B. HHS's Interpretation of the Free Choice of Providers Provision is Entitled to Deference

Not only is Arizona's interpretation unpersuasive, but it conflicts with the longstanding view of the agency charged by Congress to administer the Medicaid program and determine whether States are complying with its statutory and regulatory requirements. For decades, HHS has repeatedly interpreted the "qualified" language in Section 1396a(a)(23) to prohibit a State from denying access to a provider for reasons unrelated to the ability of that provider to perform Medicaid-covered services or to properly bill for those services, including reasons such as the scope of the medical services that the provider chooses to offer, including those that the provider chooses to offer outside of Medicaid. This longstanding interpretation is entitled to deference and resolves the issue here.

Under its broad statutory authority to promulgate regulations regarding Medicaid, 42 U.S.C. § 1302(a), HHS issued a regulation explaining that States may "[s]et[] reasonable standards relating to the qualifications of providers." 42 C.F.R. § 431.51(c)(2); *see also* CMS, State Medicaid Manual § 2100 (Exhibit A) (States may "impos[e] reasonable and objective qualification standards" for providers). Indeed, "[t]he purpose of the free choice provision is to allow [Medicaid] recipients the same opportunities to choose among available providers of covered health care and services as are normally offered to the general population." *Id.*[14]

---

the costs directly attributable to Medicaid-covered services, 42 U.S.C. §1396a(a)(30)(A). It may not, however, violate its statutory mandate to provide beneficiaries with their free choice of provider.

[14] In specific contexts where CMS has applied the freedom of choice provision, CMS has applied that rationale and long made clear that "reasonable and objective" qualifications must be related to the ability of health care providers to provide those services, or appropriately bill for them. For example, in the context of targeted case management services (a type of medical assistance covered under Medicaid), States may set only those qualifications for providers that are "reasonably related to the case management functions that a provider is expected to perform [and that] reasonable provider qualifications are necessary to assure that case managers are capable of rendering services of acceptable quality." State Medicaid Manual § 4302.2(E); *see also* 42 Fed. Reg. 64,345, 64,345

12

Consistent with this understanding of the free choice of providers provision, HHS has not hesitated to disapprove state plan amendments that impose restrictions on providers unrelated to their fitness to provide quality health care services or properly bill for those services.[15] Last year, HHS reaffirmed its long-standing interpretation and applied it to Indiana's state plan amendment that attempted to implement a restriction similar to that challenged here. *Compare* Ind. Code. § 5-22-17-5.5 *with* Ariz. Rev. Stat. 35-196.05.  The State of Indiana submitted a state plan amendment to HHS for review, asking for permission to bar Medicaid beneficiaries from receiving covered services from providers that perform elective abortions.  HHS concluded that this restriction on the beneficiaries' choice of providers violated the free choice of providers provision, and disallowed Indiana's state plan amendment.  *See* Ex. B (initial disapproval); *see also* Pl.'s Mot. for PI, Ex. 1, ECF No. 7-1 (proposed decision on reconsideration).[16]  The Secretary has also circulated an informational bulletin reminding States that they "may not exclude qualified health care providers—whether an individual provider, a physician group, an outpatient clinic, or a hospital—from providing services under the program because they separately provide abortion services (not funded by federal Medicaid dollars, consistent with the federal prohibition) as part of their scope of practice." Ex. C.  This longstanding

---

(Nov. 16, 1977) (citing the free choice of provider provision, and adopting regulation forbidding states from refusing to reimburse Indian health care providers, stating "HEW does not find it to be proper and efficient admin[istration] to arbitrarily refuse to enter into provider agreements with a class of provider, or with a provider or providers that are owned by a specific governmental entity, private entity or otherwise").

[15] For example, in 2004, HHS disapproved a Maryland state plan amendment that would have limited the provision of case management services for children receiving foster care to governmental child welfare agencies or private firms contracting with government agencies.  CMS, Final Decision Disapproving Maryland State Plan Amendment 1-2 (2004) (Ex. D).  HHS reasoned that the "restriction [to State agencies or private firms contracting with State agencies] is unnecessary in the context of providing Medicaid case management services." *Id.* at 27; *see also, e.g.*, 53 Fed. Reg. 8699 (Mar. 16, 1988) (rejecting plan that would limit providers to "private nonprofit" organizations).

[16] Indiana sought reconsideration of HHS's initial decision, and filed exceptions to this proposed decision on reconsideration, which is now under review by the Administrator of CMS, who issues the final decision. 42 C.F.R. §§ 430.66, 430.102(b).

13

1  interpretation of the free choice of providers provision, embodied in decades of past
2  practice and, most recently, in the denial of Indiana's state plan amendment, is entitled to
3  *Chevron* deference. *See Resident Councils of Wash. v. Leavitt*, 500 F.3d 1025, 1033 (9th
4  Cir. 2007) (noting that the Ninth Circuit "regularly applie[s] *Chevron* deference to
5  agency interpretations of the Medicare and Medicaid statutes"); *Planned Parenthood of*
6  *Indiana*, 794 F. Supp. 2d at 906 ("[A]scribing deference to the CMS letter is, in the
7  Court's view, squarely in line with a thorough body of case law.").
8        Without citing any authority, Arizona summarily asserts that *Chevron* deference is
9  not warranted to HHS's views on the "interpretive question" because Congress did not
10 intend to delegate to HHS. Def.'s Opp. to PI at 15 n.6. This argument, however,
11 "overlooks the nature of the Secretary's authority:" by explicitly entrusting HHS with the
12 authority to review State plan amendments to determine whether States are complying
13 with Medicaid, Congress has made an "express delegation of specific interpretive
14 authority" to HHS. *See Pharm. Research & Mfrs. Am. v. Thompson*, 362 F.3d 817, 821-
15 22 (D.C. Cir. 2004) ("This is not a case of implicit delegation of authority through the
16 grant of general implementation authority. In the case of the Medicaid payment statute,
17 the Congress expressly conferred on the Secretary authority to review and approve state
18 Medicaid plans as a condition to disbursing federal Medicaid payments."); *Harris*, 442
19 F.3d at 467-68. And, the Courts of Appeals—including the Ninth Circuit—have
20 universally held that an interpretation made through a decision by CMS regarding a state
21 plan amendment's compliance with Medicaid is entitled to *Chevron* deference. *E.g.*,
22 *Alaska Dep't of Health & Social Servs. v CMS*, 424 F.3d 931, 939 (9th Cir. 2005); *see*
23 *also Douglas v. Indep. Living Center of S. Cal., Inc.*, 132 S. Ct. 1204, 1210 (2012).[17]

---

[17] *See also, e.g.*, *W. Va. v. Thompson*, 475 F.3d 204, 212-13 (4th Cir. 2007) ("Courts, therefore, have rightly granted *Chevron* deference to agency interpretations of statutes in the context of state plan amendment disapprovals." (collecting cases)); *Harris*, 442 F.3d at 467-68 ("[T]he agency's approval of the state plan amendment is entitled to *Chevron* deference." (collecting cases)); *Pharm. Research & Mfrs. Am.*, 362 F.3d at 821-22 (extending *Chevron* deference to approval of plan over objections including that the interpretation was "not the result of a formal administrative process" and was "developed

1    HHS's reasonable interpretations of ambiguous provisions of the Medicaid statute
control.  "A statute is ambiguous if Congress has not 'directly spoken to the precise
question at issue.'"  *Putnam Family P'ship v. City of Yucaipa, Cal.*, 673 F.3d 920, 928
(9th Cir. 2012) (quotation omitted).  Congress did not speak to the "precise question at
issue" in this case: whether the term "qualified" gives States the authority to restrict
beneficiaries' free choice of providers for reasons wholly unrelated to a provider's ability
to perform medical services and properly bill for them.  Therefore, unless the Secretary's
interpretation is unreasonable, this Court must defer to the Secretary's interpretation.  *See
Holly Farms Corp. v. NLRB*, 517 U.S. 392, 409 (1996). The Court "need not conclude
that the agency construction was the only one it permissibly could have adopted," *Rust v.
Sullivan*, 500 U.S. 173, 184 (1991) (quotation omitted), or that it is "the best
interpretation of the statute," *United States v. Haggar Apparel Co.*, 526 U.S. 380, 394
(1999) (citation omitted), or that it is the "most natural one." *Pauley v. BethEnergy
Mines, Inc.*, 501 U.S. 680, 702 (1991).  The agency's view is reasonable so long as it is
not "flatly contradicted" by plain language.  *Dep't of the Treasury v. Fed. Labor
Relations Auth.*, 494 U.S. 922, 928 (1990).

    HHS's interpretation is supported by the common meaning of "qualified," as
meaning "fitted (as by training or experience) for a given purpose."  Merriam-Webster's
Dictionary 1077 (11th Ed. 2003).  It is reasonable for HHS to interpret "qualified" in
accordance with this definition to refer to those standards related to a provider's fitness to
provide Medicaid services, particularly when such an interpretation accords with the
purpose of the provision.  The interpretation is eminently more reasonable than that
offered by Arizona, which would effectively eviscerate the statutory scheme.  HHS's
reasonable interpretation of the free choice of providers provision under authority
delegated to it by Congress is therefore entitled to *Chevron* deference.  And because

---

solely in response to this lawsuit"); *Arizona Hosp. and Healthcare Ass'n v. Betlach*, --- F. Supp. 2d ----, 2012 WL 999066, at*6-7 (D. Ariz. 2012). *But see Cal. Med. Ass'n v. Douglas*, 848 F. Supp. 2d 1117, 1129-30 (C.D. Cal. 2012) (declining to extend *Chevron* deference to the approval of a state plan amendment), *appeal pending*, (9th Cir.).

1  Arizona's law is inconsistent with HHS's longstanding interpretation (and, in any event,
2  is unreasonable), it must be rejected.[18]
3        Even if not entitled to full *Chevron* deference, HHS's interpretations carry
4  substantial weight as the views of an expert agency charged by Congress with
5  administering a complex and technical regulatory program.  Because Congress "commits
6  to [HHS] the power to administer" Medicaid, HHS's interpretation of Medicaid "carries
7  weight.  After all, the agency is comparatively expert in the statute's subject matter."
8  *Douglas,* 132 S. Ct. at 1210.  "'[R]eliance on [the] Secretary's significant expertise [also
9  is] particularly appropriate in the context of a complex and highly technical regulatory
10 program' like Medicaid."  *Harris*, 442 F.3d at 468 (quotation omitted).  Given the
11 numerous features of the Medicaid statute that counsel deference to HHS's consistent
12 interpretations even under a non-*Chevron* analysis, the debate over whether *Chevron*
13 applies is arguably "more academic than pragmatic."  *See Planned Parenthood of Ind.*,
14 794 F. Supp. 2d at 906.  "[I]n cases such as those involving Medicare or Medicaid, in
15 which CMS, 'a highly expert agency[,] administers a large complex regulatory scheme in
16 cooperation with many other institutional actors, the various possible standards for
17 deference'—namely, *Chevron* and *Skidmore*—'begin to converge.'"  *Estate of Landers v.*

---

[18] The Secretary's interpretation is also entitled to deference because it is a reasonable construction of the Secretary's own regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994).  An agency's "interpretation of its own regulation is afforded even more deference than that which courts normally give agency interpretations of statutes." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 1004 (9th Cir. 2010). As explained earlier, HHS adopted 42 C.F.R. § 431.51(b) & (c), which allows a State to "[s]et[] reasonable standards relating to the qualifications of providers."  Through its disapprovals of state plan amendments throughout the years (including its disapproval of Indiana's state plan amendment), its State Medicaid Manual, and prior legal briefs, Ex. E & F, HHS has interpreted "reasonable standards" to refer to standards that are relevant to providers' ability to render quality services and to properly bill for those services.  The Court must defer to the interpretation contained in this Statement of Interest and prior briefs.  *M.R. v. Dreyfus*, --- F.3d ----, 2012 WL 2218824, at *27-28 (9th Cir. 2012); *see also Talk America, Inc. v. Mich. Bell. Tel. Co.*, 131 S. Ct. 2254, 2261 (2011).

1. *Leavitt*, 545 F.3d 98, 107 (2d Cir. 2008) (quotation omitted). As directly relevant to this matter, CMS exercised its expertise through the formal decision of the agency to disapprove Indiana's state plan amendment and through the issuance of an informational bulletin, and this interpretation is consistent with the longstanding view of the agency, including the CMS State Medicaid Manual and prior decisions disapproving state plan amendments that violated the free choice of providers provision. *Katie A., ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1155 n. 11 (9th Cir. 2007). The Court should defer to this reasonable interpretation by an expert agency vested by Congress with broad power to ensure that States comply with the Medicaid statute.

## II.   A Preliminary Injunction is in the Public Interest

Preliminary injunctive relief is also warranted here because injunctive relief is in the public interest. Injunctive relief will prevent injury to Arizona's Medicaid beneficiaries by permitting them to receive Medicaid services from the qualified and willing provider of their choice. And although Arizona claims that its law vindicates an asserted state public policy, Congress, in the Medicaid statute, has already made a different policy judgment: to ensure that beneficiaries who wish to receive Medicaid services—particularly family planning services, *see* 42 U.S.C. § 1396a(a)(23)(B)—may receive those services from providers of their own choosing, so long as those providers provide quality services and properly bill Medicaid. "[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001). Injunctive relief is particularly necessary and in the public interest here, as Arizona has expressed its view that it is free to accept federal Medicaid dollars but it is not bound by federal Medicaid requirements. *See* Def.'s Opp. to PI at 11-12. Operating a State Medicaid program in open violation of federal law is not in the public interest.

## CONCLUSION

The motion for a preliminary injunction should be granted.

| | |
|---|---|
| Dated: September 11, 2012 | Respectfully submitted,<br><br>STUART F. DELERY<br>Acting Assistant Attorney General<br><br>JOHN S. LEONARDO<br>United States Attorney<br><br>SHEILA M. LIEBER<br>Deputy Director<br>Federal Programs Branch<br><br>*/s/Joseph Mead*<br>TAMRA T. MOORE<br>ETHAN P. DAVIS<br>JOSEPH MEAD<br>Trial Attorneys<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Ave. NW<br>Washington, D.C. 20001<br>Tel: (202) 305-8546/ Fax: (202) 305-8517<br>E-mail: Joseph.W.Mead@usdoj.gov |

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2012, I caused to be electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alice Clapman
Planned Parenthood Federation of America
Alice.Clapman@ppfa.Org

Andrew Beck
ACLU - New York, NY
Abeck@aclu.Org

Daniel Benjamin Pasternak
Greenberg Traurig LLP
Pasternakd@gtlaw.Com

Daniel Joseph Pochoda
ACLU - Phoenix, AZ
Dpochoda@acluaz.Org

Kelly Joyce Flood
ACLU - Phoenix, AZ
Kflood@acluaz.Org

Lawrence Jay Rosenfeld
Greenberg Traurig LLP - Phoenix
Rosenfeldl@gtlaw.Com

Susan Talcott Camp
American Civil Liberties Union
Tcamp@aclu.Org

David Robert Cole
Office of the Attorney General
Dave.Cole@azag.Gov

Steven Henry Aden
Alliance Defending Freedom
Saden@alliancedefendingfreedom.Org

Thomas Matthew Collins
Office of the Attorney General
Thomas.Collins@azag.Gov

Logan T Johnston
Johnston Law Offices PLC
Ltjohnston@johnstonlawoffices.Net

I further certify that on September 11, 2012, I caused the foregoing document to be served by U.S. Mail on the following counsel:

Roger K Evans
Planned Parenthood Federation of America - New York, NY
434 W 33rd St.
New York, NY  10001

                                               */s/Joseph Mead*
                                                  Joseph Mead