1

2
**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
3
PHOENIX, ARIZONA 85016
(602) 445-8000
4
Lawrence J. Rosenfeld, SBN 004426
rosenfeldl@gtlaw.com
5

6

7
**PLANNED PARENTHOOD
FEDERATION OF AMERICA**
1110 VERMONT AVENUE NW, SUITE 300
8
WASHINGTON, DC  20005
(202) 973-4800
9
Alice Clapman
(Admitted *Pro hac vice*)
10
alice.clapman@ppfa.org

11

12

13
**ACLU FOUNDATION OF ARIZONA**
3707 NORTH 7TH STREET, SUITE 235
14
PHOENIX, ARIZONA  85014
(602) 650-1854
15
Daniel J. Pochoda, SBN 021979
dpochoda@acluaz.org
16

17
*Attorneys for Plaintiffs*

18

**PLANNED PARENTHOOD
FEDERATION OF AMERICA, INC.**
434 WEST 33RD STREET
NEW YORK, NEW YORK 10001
(212) 541-7800

Roger Evans
(Admitted *Pro hac vice*)
roger.evans@ppfa.org

**ACLU FOUNDATION**
125 BROAD STREET, 18TH FLOOR
NEW YORK, NEW YORK  10004
(212) 549-2633

Susan Talcott Camp
(Admitted *Pro hac vice*)
tcamp@aclu.org
Andrew Beck
(Admitted *Pro hac vice*)
abeck@aclu.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

19

20
Planned Parenthood Arizona, Inc.; Jane
Doe #1; Jane Doe #2, Jane Doe #3; Eric
21
Reuss, M.D.,

22
              Plaintiffs,

23
         v.

24
Tom Betlach, Director, Arizona Health
25
Care Cost Containment System; Tom
Horne, Attorney General,
26

27
              Defendants.

28

No. 2:12-cv-01533-NVW

**FIRST AMENDED COMPLAINT
FOR INJUNCTIVE AND
DECLARATORY RELIEF**

1

PHX 330437660v1

Plaintiffs Planned Parenthood Arizona ("PPAZ"), Jane Doe #1, Jane Doe #2, and Jane Doe #3, and Eric Reuss, M.D., by and through their attorneys, bring this Complaint against the above-named Defendants, their employees, agents, delegatees, and successors in office, and in support thereof state the following:

**INTRODUCTORY STATEMENT**

1.      This civil action is brought pursuant to 42 U.S.C. § 1983 and the United States Constitution to vindicate rights secured by the federal Medicaid statutes as well as the Supremacy, Due Process, Equal Protection and Contract Clauses of the United States Constitution.

2.      On May 4, 2012, Arizona Governor Jan Brewer signed into law Arizona Assembly HB 2800, 2nd Regular Session, 50th Legislature (2012), codified at Ariz. Rev. Stat. § 35-196.05 ("the Act"). The Act disqualifies from eligibility to participate in Arizona's Medicaid program any "person" who provides abortions except in narrowly defined circumstances.   On or about June 25, 2012, the Arizona Health Care Cost Containment System (AHCCCS), the Medicaid agency in Arizona, issued implementing instructions requiring all AHCCCS medical providers to attest that they do not provide abortions outside the limited circumstances indicated in the Act by August 2, 2012. Failure to provide this attestation will result in the medical provider no longer being eligible to provide and receive reimbursement for medical services to patients enrolled in Medicaid.

3.      Plaintiff Planned Parenthood Arizona (PPAZ) has been a provider of Medicaid services in Arizona for decades.  Among the many reproductive health medical services that PPAZ provides is abortion, including abortions that will disqualify PPAZ from continued eligibility to participate in the Medicaid program.  Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3 are patients of PPAZ who are enrolled in the Medicaid program.   Plaintiff Eric Reuss, M.D., is a physician specializing in Obstetrics and

2

Gynecology who treats patients who are Medicaid beneficiaries. Dr. Reuss also provides abortions to some of his patients that will disqualify him from continued eligibility to participate in the Medicaid program.

4.      Plaintiffs seek declaratory and injunctive relief. The Act violates Section 1396a(a)(23) of Title 42 of the United States Code ("Medicaid freedom of choice provision") because, by barring PPAZ and Dr. Reuss from the Medicaid program, it prevents their patients from receiving services from the qualified, willing provider of their choice. It violates the Supremacy Clause because it imposes restrictions on eligibility for Medicaid funds that are in excess of and inconsistent with restrictions and requirements established by the federal government for receipt of these funds.  The Act imposes an unconstitutional condition in violation of the Due Process Clause because it disqualifies PPAZ and Dr. Reuss from participation in the Medicaid program based on their provision of abortion outside the program.  It violates the Equal Protection Clause because it distinguishes, without adequate justification, between family planning providers who provide abortion outside the Medicaid program and those who do not. Finally, the Act violates the Contracts Clause because it impairs PPAZ's and Dr. Reuss's contractual relationships with the State's managed care contractors and the contractual obligations contained therein.

5.      The Act is scheduled to take effect on August 2, 2012.  Unless enjoined by this Court, the Act will cause significant and irreparable harm to Dr. Reuss and his Medicaid patients, and to PPAZ and to its Medicaid patients, including Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3, who will lose their provider of choice, will find their family planning services interrupted, and—particularly in certain underserved areas—will be left with few or no alternative providers.

**JURISDICTION AND VENUE**

6.      Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331

1  & 1343.

2    7. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28

3  U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and

4  by the general legal and equitable powers of this Court.

5    8. Venue in this judicial district is proper under 28 U.S.C. § 1391.

6  **THE PARTIES**

7  **A.** **Plaintiffs**

8    9. Plaintiff PPAZ is a not-for-profit corporation organized under the laws of

9  Arizona.  PPAZ brings this action on behalf of itself, its patients, and the physicians it

10  employs to provide services to its patients.

11    10. PPAZ, the largest provider of reproductive health services in Arizona,

12  operates 13 health centers throughout the state. For more than twenty years, PPAZ has

13  participated in the Medicaid program, providing medical services to low-income

14  enrollees.

15    11. Each year, PPAZ provides more than 66,000 patient visits, approximately

16  3,000 of which are for Medicaid patients.  For example, last year, during these visits,

17  PPAZ provided over 9,400 pap smears, over 16,200 tests and treatments for sexually

18  transmitted diseases, over 33,700 breast exams, 136 HPV immunizations, and over 85,400

19  contraceptives.

20    12. At five of its 13 health centers, PPAZ also provides abortions.

21    13. Plaintiffs Jane Doe #1 and Jane Doe #2 are a mother and daughter who are

22  Arizona residents and Medicaid patients. They have sought family planning services at

23  PPAZ's Yuma Center and desire to continue to do so.  They are due back for their next

24  appointments in September 2012. They sue on their own behalf.

25    14. Plaintiff Jane Doe #3, an Arizona resident and Medicaid patient, has been a

26  patient of PPAZ since 1997.  She regularly seeks family planning services at PPAZ's

27

28

Flagstaff Center and desires to continue to do so.   She is due back for her next appointment in September 2012. She sues on her own behalf.

15.     Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3 appear anonymously because of the private and personal nature of the medical care that they receive at PPAZ, and their desire not to have that information become public in order for them to assert their legal rights.

16.     Plaintiff Eric Reuss, M.D., is a physician with a private practice, Scottsdale Obstetrics & Gynecology, P.C., in Scottsdale, Arizona.  Dr. Reuss is a Diplomate of the American College of Obstetrics and Gynecology, and his practice is limited to Obstetrics and Gynecology.  At any given time, approximately 20% of his Obstetrics patients are Medicaid beneficiaries.  In his gynecology practice, Dr. Reuss provides a small number of abortions each year.  Dr. Reuss is also a member of the Board of Directors of PPAZ.  Dr. Reuss sues on his own behalf and on behalf of his patients.

**B.     Defendants**

17.     Defendant Tom Betlach is the Director of the Arizona Health Care Cost Containment System (AHCCCS), the agency that administers the state Medicaid program, and which, in the absence of the Act, would disburse the funds at issue to PPAZ and Dr. Reuss through the managed care contractors with which they currently contracts. Defendant Betlach is sued in his official capacity.

18.     Defendant Tom Horne is the Attorney General of Arizona, and is authorized by the Act to bring an action to enforce its terms. Defendant Horne is sued in his official capacity.

## THE ACT AND ITS IMPLEMENTATION

19.     The Act provides that "[t]his state or any political subdivision of this state may not enter into a contract with or make a grant to any person that performs nonfederally qualified abortions or maintains or operates a facility where nonfederally

qualified abortions are performed for the provision of family planning services." The Act defines "nonfederally qualified abortion" as an "abortion that does not meet the requirements for federal reimbursement under Title XIX of the Social Security Act," i.e., any abortion except where the pregnancy is the result of rape or incest or threatens the life of the patient. Ariz. Rev. Stat. § 35-196.05(B).

20.     On June 25, 2012, AHCCCS posted an attestation form and a form letter on its website, along with a warning that "providers or facilities qualified to perform abortions within the scope of their license will be required to complete and return the attestation."     *See*     http://www.azahcccs.gov/reporting/legislation/sessions/2012/SecondReg.aspx.   These forms require these providers to attest, by August 2, 2012, that they no longer provide abortions except where the pregnancy is a result of rape or incest, where the pregnancy endangers the woman's life, and for Medicaid patients only, certain situations where the pregnancy endangers the woman's health.  The letter makes clear that providers who fail to sign the attestation form will have their provider agreement terminated and will no longer be eligible to receive Medicaid reimbursements. A true and correct copy of this letter is attached and incorporated herein as Exhibit 1.

## THE MEDICAID PROGRAM

### 1.  The Medicaid Statute

21.     The Medicaid program, established under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq*., pays for medical care provided to eligible needy people. A State may elect whether or not to participate; if it chooses to do so, it must comply with the requirements imposed by the Medicaid statute and by the Secretary of the U.S. Department of Health and Human Services ("HHS") in her administration of Medicaid. *See generally* 42 U.S.C. § 1396a(a)(1)-(83).

22.     To receive federal funding, a participating State must develop a "plan for medical assistance" and submit it to the Secretary of HHS for approval. 42 U.S.C. §

1   1396a(a).

2       23.    Among other requirements, the State plan must provide that: "[A]ny

3   individual eligible for medical assistance . . . may obtain such assistance from any

4   institution, agency, community pharmacy, or person, qualified to perform the service or

5   services required . . . who undertakes to provide him such services." 42 U.S.C. §

6   1396a(a)(23)(A).

7       24.    Congress has singled out family planning services for special additional

8   protections to ensure freedom of choice, specifically providing that, with respect to these

9   services and with certain limited exceptions not applicable here, "enrollment of an

10  individual eligible for medical assistance in a primary care case-management system . . .,

11  a medicaid managed care organization, or a similar entity shall not restrict the choice of

12  the qualified person from whom the individual may receive services." § 1396a(a)(23)(B).

13      25.    For decades, Congress has attached a rider to HHS's appropriations

14  blocking the use of Medicaid funds for abortion, except in limited circumstances. *See,*

15  *most recently*, Consolidated Appropriations Act of 2012, Pub. L. No. 112-74, §§ 613-14,

16  125 Stat. 786, 925-26 (2011).  However, the Medicaid Act does not prohibit entities that

17  provide abortion services from receiving Medicaid funds.

18  **2.  Implementation of the Medicaid Act**

19      26.    For decades, HHS has repeatedly interpreted the "qualified" language in

20  Section 1396a(a)(23) to prohibit states from denying access to a provider for reasons

21  unrelated to the ability of that provider to perform Medicaid-covered services or to

22  properly bill for those services, including reasons such as the scope of the medical

23  services that the provider chooses to offer.

24      27.    Most recently, the Centers for Medicare and Medicaid Services ("CMS")

25  rejected an Indiana plan that, just like the Arizona Act, barred state agencies from

26  contracting with or making grants to any entities that perform abortion. Specifically, CMS

27

28

1    found that Indiana's plan violated the Medicaid freedom of choice provision.

2        28.    HHS has explained that "[t]he purpose of the free choice provision is to

3    allow [Medicaid] recipients the same opportunities to choose among available providers

4    of covered health care and services as are normally offered to the general population."

5    State Medicaid Manual § 2100, CMS Manuals Publication #45.

6        29.    Consistent with this understanding, HHS has a long history of rejecting state

7    plans to limit the type of provider that can provide particular services.  *See, e.g.*, 53 Fed.

8    Reg. 8699 (Mar. 16, 1988) (rejecting plan that would limit providers to "private

9    nonprofit" organizations).

10   **3.  PPAZ and Dr. Reuss's status as providers in Arizona's Medicaid Program**

11       30.    Arizona does not directly reimburse providers.  Rather, it contracts with

12   private managed care providers (collectively, "AHCCCS managed care contractors"), who

13   in turn contract with medical care providers to reimburse those providers for providing

14   care to Medicaid beneficiaries who are enrolled with the respective managed care

15   contractors. PPAZ and Dr. Reuss have entered into fee-for-service agreements with

16   several of the AHCCCS managed care contractors.  Under the terms of their contracts,

17   PPAZ and Dr. Reuss agreed to provide health and medical services to the contractors'

18   members, and the contractor agreed to reimburse them for these services. PPAZ and its

19   physicians, and Dr. Reuss, must maintain their provider participation agreements with

20   AHCCCS in order to be reimbursed for providing services to the AHCCCS managed care

21   contractors.

22       31.    AHCCCS re-credentials a provider every three years.  AHCCCS has re-

23   credentialed PPAZ, without break or incident, at least since 1991, and has re-credentialed

24   Dr. Reuss without break or incident at least since 2001.

25       **THE IMPACT OF THE ACT ON PPAZ, DR. REUSS, AND THEIR PATIENTS**

26       32.    Unless the Act is enjoined or unless PPAZ, its physicians, and Dr. Reuss

27

28

were to cease providing abortions (except under the narrow circumstances allowed under the Medicaid program), they will no longer be able to provide healthcare services to their Medicaid patients, and they will lose the revenues from those services.  PPAZ treats approximately 3,000 Medicaid patients annually, and receives revenue of approximately $350,000 annually.  At any given time, Dr. Reuss provides ongoing obstetrical care to approximately 40-50 Medicaid patients.

33.    Implementation of the Act will deprive PPAZ and Dr. Reuss's patients, including Plaintiffs Jane Doe #1, Jane Doe #2, and Jane Doe #3, of access to the high-quality, specialized care that PPAZ and Dr. Reuss provide.

34.    Four of PPAZ's 13 medical centers are in areas that the federal government has classified as "medically underserved" based on four variables: 1) the ratio of primary medical care physicians per 1,000 population, 2) the infant mortality rate, 3) the percentage of the population with incomes below the poverty level, and 4) the percentage of the population age 65 or over.  These are PPAZ's Flagstaff Health Center, Maryvale Health Center, Yavapai Health Center, and Tempe Health Center.  Five of PPAZ's centers are in areas classified as "low provider," a designation based on similar criteria.  *See* Shortage Area Database, Health Resources and Services Administration, U.S. Dep't of Health and Human Services, *available at* http://datawarehouse.hrsa.gov/GeoAdvisor /ShortageDesignationAdvisor.aspx (last accessed June 29, 2012); Guidelines for MUA and MUP Designation U.S. Dep't of Health and Human Services, *available at* http://bhpr.hrsa.gov/shortage/muaps/index.html (last accessed July 10, 2012).

35.    Many of the Medicaid patients in these areas have few or no alternative options and will find it difficult or impossible to access the reproductive health care services PPAZ provides if the Act goes into effect.  Those who are unable to find an adequate alternative will not receive the medical services they need, an effect that would lead to higher rates of unintended pregnancies and transmission of sexual diseases.

36.     Patients insured through Medicaid choose PPAZ based on a number of factors that are generally not available at other providers.   With its evidence-based practices and up-to-date technology, PPAZ is known as a provider of high-quality medical care.  Many individuals who receive other health care through community care providers or other Medicaid providers choose to have a separate provider such as PPAZ for their reproductive health care because they are concerned about their privacy and because they fear being judged by other providers.

37.     In addition, many low-income patients have unique scheduling constraints because they are juggling inflexible work schedules, childcare obligations, and lack of childcare resources. To ensure that these patients have access to family planning services, PPAZ offers extended hours. One PPAZ center is open seven days a week.  All of PPAZ's urban centers are open at least one night per week until seven or eight, and five of PPAZ's centers have Saturday hours. In addition, PPAZ spaces patient appointments so as to minimize wait times.  Other providers of similar services often require long waits before patients can be seen.

38.     Medicaid patients generally have a hard time finding family planning and related reproductive health care services in Arizona. Because Arizona reimburses providers at exceptionally low levels, many health care providers refuse to take Medicaid. For example, Medicaid reimburses PPAZ at 45% *less* than the cost PPAZ incurs by providing the services.

39.     One group at particular risk of losing necessary—and in some cases life-saving—services is women who are legally entitled to a Medicaid-funded abortion because their pregnancy either is the result of rape or incest or poses certain risks to their health or life. On information and belief, there are few, if any, abortion providers in Arizona who will be able to continue participating in Medicaid if the Act goes into effect. Thus, should the Act take effect, Arizona women on Medicaid who otherwise would have

1   been able to obtain a Medicaid-funded abortion will no longer be able to do so because

2   those physicians will have been disqualified from Medicaid.

3       40.     Dr. Reuss also would be forced to cease providing obstetrical care to women

4   on Medicaid. A majority of these patients come to him on referral from prior patients who

5   were pleased with the care he provided.  If Dr. Reuss is forced to stop treating Medicaid

6   patients, these women would be deprived of the physician of their choice, a highly

7   qualified specialist, to help them safely carry their pregnancies to term.

8       41.     Plaintiff Jane Doe #1 is a single mother of four children (one of them Jane

9   Doe #2).  They live in Yuma, Arizona, a "low provider area." She works full time as a

10  restaurant manager. Plaintiff Jane Doe #3 lives in Flagstaff, Arizona, a "medically

11  underserved" area. She has a longstanding relationship with PPAZ as her main provider

12  for family planning and other reproductive health services, and chooses to receive her care

13  at PPAZ for any services Medicaid covers.  She is a single parent, juggling work, school,

14  and childcare obligations.  All three individual Plaintiffs rely on PPAZ as the place they

15  can turn to for urgent care and for prompt, efficient services.  All three patients are due

16  back at Planned Parenthood for further treatment in September 2012.  If the Act goes into

17  effect, they will be prevented from receiving services from their provider of choice, will

18  have their health care interrupted, and may encounter difficulties finding alternative care.

19                          **CLAIMS FOR RELIEF**

20                      **CLAIM I – MEDICAID ACT**

21      42.     Plaintiffs hereby incorporate Paragraphs 1 through 41 above.

22      43.     The Act violates Section 1396a(a)(23) of Title 42 of the United States Code

23  by denying PPAZ's patients, including the Plaintiffs Jane Doe #1, Jane Doe #2, and Jane

24  Doe #3, and Dr. Reuss's patients, the right to choose any willing, qualified healthcare

25  provider under the Medicaid program.

26      44.     Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act

27

28

1   illegal and preliminarily and permanently enjoin enforcement of the Act.

2                    **CLAIM II – SUPREMACY CLAUSE**

3        45.    Plaintiffs hereby incorporate Paragraphs 1 through 41 above.

4        46.    The Act violates the Supremacy Clause of the United States Constitution by

5   placing impermissible eligibility restrictions on federal funds that are in excess of and

6   inconsistent with those established by the federal government.

7        47.    Therefore, pursuant to 42 U.S.C. § 1983, as well as directly pursuant to the

8   Supremacy Clause, this Court should declare the Act to be unconstitutional and should

9   preliminarily and permanently enjoin enforcement of the Act.

10               **CLAIM III – FOURTEENTH AMENDMENT DUE PROCESS**

11       48.    Plaintiffs hereby incorporate Paragraphs 1 through 41 above.

12       49.    The Act imposes an unconstitutional condition on PPAZ's and Dr. Reuss's

13  eligibility to participate in Medicaid because it disqualifies them from Medicaid based on

14  their provision of abortion services outside the Medicaid program.

15       50.    Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act

16  to be unconstitutional and should preliminarily and permanently enjoin enforcement of the

17  Act.

18          **CLAIM IV – FOURTEENTH AMENDMENT EQUAL PROTECTION**

19       51.    Plaintiffs hereby incorporate Paragraphs 1 through 41 above.

20       52.    The Act violates PPAZ's and Dr. Reuss's Fourteenth Amendment rights by

21  singling out abortion providers for unfavorable treatment without adequate justification.

22       53.    Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act

23  to be unconstitutional and should preliminarily and permanently enjoin enforcement of the

24  Act.

25                    **CLAIM V – CONTRACTS CLAUSE**

26       54.    Plaintiffs hereby incorporate Paragraphs 1 through 41 above.

27

28

55.     The Act violates PPAZ's and Dr. Reuss's rights under the Contracts Clause of the United States Constitution by substantially impairing their contractual relationships with AHCCCS managed care contractors without furthering a significant and legitimate public purpose.

56.     Therefore, pursuant to 42 U.S.C. § 1983, this Court should declare the Act to be unconstitutional and should preliminarily and permanently enjoin enforcement of the Act.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

57.     Issue a declaratory judgment that the Act violates the Medicaid Act and is therefore void and of no effect;

58.     Issue a declaratory judgment that the Act violates the Supremacy Clause of the United States Constitution and is therefore void and of no effect;

59.     Issue a declaratory judgment that the Act violates the Due Process Clause of the Fourteenth Amendment and is therefore void and of no effect;

60.     Issue a declaratory judgment that the Act violates the Equal Protection Clause of the Fourteenth Amendment and is therefore void and of no effect;

61.     Issue a declaratory judgment that the Act violates the Contract Clause of the Constitution and is therefore void and of no effect;

62.     Issue preliminary and permanent injunctive relief, without bond, restraining the enforcement, operation, and execution of the Act by enjoining Defendants, their agents, employees, appointees, delegates, or successors from enforcing, threatening to enforce, or otherwise applying the provisions of the Act;

63.     Grant Plaintiff attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

64.     Grant such further relief as this Court deems just and proper.

1

        Dated:  September 20, 2012.

2    Roger Evans*                          /s/ Lawrence J. Rosenfeld
     PLANNED PARENTHOOD                   Lawrence Rosenfeld
3    FEDERATION OF AMERICA                AZ Bar No. 004426
4    434 West 33rd Street                 Greenberg Traurig
     New York, New York 10001             2375 East Camelback Road, Suite 700
5    (212) 261-4708                       Phoenix, AZ 85016
     roger.evans@ppfa.org                 rosenfeldl@gtlaw.com
6

7    Alice Clapman*                       Daniel J. Pochoda
     PLANNED PARENTHOOD                   AZ Bar No. 021979
8    FEDERATION OF AMERICA                ACLU FOUNDATION OF ARIZONA
9    1110 Vermont Avenue NW, Suite 300    77 E. Columbus Street, Suite 205
     Washington, DC 20005                 Phoenix, AZ  85012
10   (202) 973-4800                       (602-650-1854
     alice.clapman@ppfa.org               dpochoda@acluaz.org
11

12   Talcott Camp*                        *Attorneys for Plaintiff*
     Andrew Beck*
13   ACLU FOUNDATION                      *By Special Appearance
14   125 Broad Street, 18th Floor
     New York, NY 10004
15   (212) 549-2633
     tcamp@aclu.org
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

☒     I hereby certify that on September 20, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

David R. Cole
Solicitor General
Thomas Matthew Collins
Arizona Attorney General's Office
1275 West Washington Street
Phoenix, Arizona  85007-2997
Dave.Cole@azag.gov
Thomas.Collins@azag.gov
*Attorneys for Defendant Tom Horne, Attorney General*

Logan T. Johnston
Johnston Law Offices, P.L.C.
1402 East Mescal Street
Phoenix, Arizona  85020
LTJohnston@JohnstonLawOffices.net
*Attorneys for Defendant Tom Betlach, Director, Arizona Health Care Cost Containment System*

Steven H. Aden
Catherine G. Foster
Alliance Defending Freedom
801 G Street, N.W., Suite 509
Washington, DC  20001
Saden@telladf.org
Cfoster@adf.org
*Attorneys for Defendant Tom Horne, Attorney General, State of Arizona*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stuart F. Delery
Acting Assistant Attorney General
John S. Leonardo
United States Attorney
District of Arizona
Sheila M. Lieber
Deputy Director, Federal Programs Branch
Tamra T. Moore
Ethan P. Davis
Joseph Mead
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C.  20001
Joseph.W.Mead@usdoj.gov
Tamra.moore@usdoj.gov
*Attorneys for the United States of America*


                              */s/ Colleen B. Mantz*
                              Colleen B. Mantz