**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Planned Parenthood Arizona, Inc.; Jane Doe #1; Jane Doe #2; Jane Doe #3; Eric Reuss, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>Tom Betlach, Director, Arizona Health Care Cost Containment System; Tom Horne, Attorney General,<br><br>Defendants. | No. CV-12-01533-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 85) and Statement of Undisputed Material Facts (Doc. 86), Defendants' Response (Doc. 101) and Statement of Facts (Doc. 100), and the Reply (Doc. 102). For the following reasons, Plaintiffs' Motion will be granted.

**I.    Procedural Background**

Plaintiffs brought this action to enjoin enforcement of Arizona Legislature HB 2800, 2nd Regular Session, 50th Legislature (2002) ("the Arizona Act" or "the Act"), which prohibits any health care provider who performs elective abortions from receiving Medicaid funding. A.R.S. § 35-196.05. Plaintiffs contend that the Act violates the Medicaid Act (Count I), and that the Act is unconstitutional (Counts II-V). The Arizona Act was scheduled to take effect on August 2, 2012, but the parties stipulated to a temporary restraining order that delayed implementation and enforcement of the Act

pending the Court's ruling on Plaintiffs' Motion for Preliminary Injunction. On October 19, 2012, the Court entered its Findings of Fact and Conclusions of Law (Doc. 78), concluding that Plaintiffs were likely to succeed on their Medicaid Act claim, and issued a Preliminary Injunction (Doc. 79) that enjoined Defendants from enforcing the Arizona Act with respect to Plaintiffs. After the Court issued its injunction, the parties stipulated that while the Preliminary Injunction was in force, Defendants would be enjoined from taking any action to implement or enforce the Act (Doc. 88). The parties then stipulated to stay all discovery in this case pending the Court's ruling on Plaintiff's Motion for Summary Judgment and agreed that the Motion does not rely on any facts that would require any discovery (Doc. 97).

**II.    Statutory Structure**

In this Motion, Plaintiffs contend that they are entitled to summary judgment on their claim that the Arizona Act violates the Medicaid Act as a matter of law. The statutory scheme underlying that claim is described in detail in the Court's previous Order (Doc. 78), so only a brief synopsis will be provided here. The Medicaid program, established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a cooperative federal-state program created to provide medical assistance to needy families and individuals. State participation in Medicaid is voluntary, but once a State elects to participate, it must meet the program's federal requirements. 42 U.S.C. §§ 1396a(a)(1)-(83); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004).

At issue here is the Medicaid Act's requirement that a state Medicaid plan "must [] provide that . . . any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required. . . ." 42 U.S.C. § 1396a(a)(23)(A). Section 1396a(a)(23) (the "freedom of choice provision") therefore confers upon Medicaid recipients "the right to choose among a range of qualified providers, without government interference." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785 (1980). A state participating in Medicaid retains the power to establish "reasonable standards relating to

the qualifications of providers. . . ." 42 C.F.R. § 431.51(c)(2).  A state can also exclude health care providers from participation in Medicaid "for any reason for which the Secretary could exclude the [provider] from participation," "[i]n addition to any other authority." 42 U.S.C. § 1396a(p)(1).

The Arizona Act prohibits any person or entity that performs abortions—except when the pregnancy is the result of rape or incest, or threatens the life or health of the mother—from participating in Arizona's Medicaid program.  A.R.S. § 35-196.05. Plaintiffs argue that they are entitled to judgment as a matter of law that the Arizona Act violates Medicaid beneficiaries' right under § 1396a(a)(23) to receive care from any qualified provider they choose.

### III.   Legal Standard

Summary judgment is proper if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The movant has the burden of showing the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  An issue of fact is material only if it "might affect the outcome of the suit under the governing law." *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1039 (9th Cir. 2000) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998)).  At the summary judgment stage, courts view all evidence in the light most favorable to the non-moving party.  *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009).

### IV.   Analysis

Both the relevant legal principles and the factual circumstances of this case remain unchanged since the Court issued its Preliminary Injunction Order.  As a result, the analysis of Plaintiffs' claim that the Arizona Act violates the Medicaid Act is substantially the same as that set forth in more detail in the Preliminary Injunction Order (Doc. 78).  The analysis in the Preliminary Injunction Order was reinforced when, after the Order was issued, the Seventh Circuit affirmed an injunction against a substantively

identical state statute from Indiana. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962 (7th Cir. 2012). In that case, the Court of Appeals also concluded that the state statute violated the Medicaid Act, for reasons that largely mirror this Court's reasoning in the Preliminary Injunction Order. Rather than repeat all of the analysis in the Preliminary Injunction Order, this Order incorporates it by reference and will summarize and expand its findings of fact and conclusions of law below.

### A. Plaintiffs Have a Right to Sue Under 42 U.S.C. § 1983.

In order to have a private right of action to enforce federal statutory rights under 42 U.S.C. § 1983, a plaintiff must establish that Congress intended the statute to create an enforceable individual right. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283–84 (2002). In their Response in Opposition to Summary Judgment, Defendants argue that Plaintiffs have failed to meet that burden and so are not entitled to judgment as a matter of law.

When Congress legislates pursuant to its spending power, it may only create mandatory federal requirements that are binding on the states when it speaks with a "clear voice" and manifests an "unambiguous" intent to confer individual rights. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17; *Gonzaga*, 536 U.S. at 280. Because Congress enacted the Medicaid Act pursuant to the spending power, a plaintiff seeking to enforce a provision of the Medicaid Act under § 1983 has the burden to show that the provision unambiguously confers an individual right. *Gonzaga*, 536 U.S. at 280; *see also Ball v. Rodgers*, 492 F.3d 1094, 1104-05 (9th Cir. 2007).

In order to establish that a Medicaid Act provision creates such an enforceable right, then, a plaintiff must show that: (1) Congress intended the provision in question to benefit the plaintiff; (2) the right allegedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute unambiguously imposes a binding obligation on the state, such that the provision is couched in mandatory, rather than precatory terms. *Blessing v. Freestone,* 520 U.S. 329, 340 (1997). The Supreme Court further clarified the first prong of this three-prong *Blessing* test by instructing courts to examine whether Congress used "rights-creating"

language to establish individual rights that were "unambiguously conferred." *Gonzaga*, 536 U.S. at 283-84.

In the Preliminary Injunction Order, the Court found that the Medicaid freedom of choice provision satisfies each prong of the *Blessing* test and creates an individual right enforceable under § 1983. There have been neither factual developments nor changes in the law that could support a different conclusion at the summary judgment stage. First, Congress evinced its intent that § 1396a(a)(23) benefit individuals by using paradigmatic "rights-creating terms." The freedom of choice provision includes language focused squarely on individuals eligible for Medicaid and provides clear instructions for what the states must do to ensure that eligible individuals receive services to which they are entitled. 42 U.S.C. §§ 1396a(a)(23)(A)-(B). Second, largely because of those clear instructions, the right of a Medicaid-eligible individual to select from among a range of qualified providers without government interference is not so vague and amorphous that it would be difficult for courts to enforce. Third, the language of the freedom of choice provision is unambiguously framed in mandatory terms: all states "must provide" that their state plans protect the right of Medicaid beneficiaries to have their choice of provider. "In sum, the [freedom of choice provision] explicitly refers to a specific class of people—Medicaid-eligible patients—and confers on them an individual entitlement—the right to receive reimbursable medical services from any qualified provider." *Planned Parenthood of Ind.*, 699 F.3d at 974.

Resisting this conclusion, Defendants again contend that § 1396a(a)(23) does not confer a private right of action under § 1983. Defendants advance two arguments, both raised in their briefing on the Preliminary Injunction but expanded in this Response. First, they argue that the freedom of choice provision is too vague for the court to enforce, and so fails to meet the second prong of the *Blessing* test. Second, they argue that the Court's interpretation of the freedom of choice provision—finding that it imposes a mandatory obligation on the states to ensure the right to receive medical services from any qualified provider—would violate the clear statement rule of *Pennhurst*.

Defendants' first argument remains unpersuasive for the same reason that it failed at the Preliminary Injunction stage: the right created by § 1396a(a)(23) "is administrable and falls comfortably within the judiciary's core interpretive competence." *Planned Parenthood of Ind.*, 699 F.3d at 974.  A court could "readily determine whether a state is fulfilling these statutory obligations by looking to sources such as a state's Medicaid plan, agency records and documents, and the testimony of Medicaid recipients and providers." *Ball*, 492 F.3d at 1115.

The core of Defendants' argument is that the use of the term "qualified" in the freedom of choice provision creates such ambiguity in the provision that it would be difficult for courts to enforce the requirement.  But there is nothing vague about the ordinary meaning of the word qualified in the provision: a "qualified" provider is one "[p]ossessing the necessary qualifications; capable or competent, [e.g.] a qualified medical examiner."  Black's Law Dictionary (9th ed. 2009).  The statute itself reflects this ordinary meaning.  The plain language of § 1396a(a)(23) connects the limitation on an individual's free choice of "qualified" providers to the ability of the provider "to perform the service or services required."  42 U.S.C. § 1396a(a)(23)(A).  States retain the authority to set qualification standards, 42 C.F.R. § 431.51(c)(2), but they can only adopt reasonable standards related to the ability of the provider to perform the Medicaid services in question.  Indeed, far from introducing ambiguity that would render the provision unenforceable, the term "qualified" in § 1396a(a)(23) "unambiguously refers to the provider's fitness to render the medical services required."  *Planned Parenthood of Ind.*, 699 F.3d at 980.

Defendants' second argument fares no better.  Because the freedom of choice provision meets all three prongs of the *Blessing* test, it also complies with the *Pennhurst* clear statement rule.  The Supreme Court reconsidered whether federal legislation enacted pursuant to the spending power can confer enforceable rights under § 1983 in *Gonzaga*, and it did so expressly in light of the restrictive *Pennhurst* clear statement rule. *Gonzaga*, 536 U.S. at 279-81, 283.  The *Blessing* test, as modified by *Gonzaga*, therefore

incorporates and develops the clear statement requirement of *Pennhurst*. *Id*. at 280-83. As a result, a provision of the Medicaid Act that satisfies the *Blessing* test, as clarified by *Gonzaga*, necessarily meets the requirement of the *Pennhurst* clear statement rule. *See Ball*, 492 F.3d at 1104-05; *see also Planned Parenthood of Ind.*, 699 F.3d at 972-73.

The Court has already concluded that the freedom of choice provision meets each prong of the *Blessing* test, and reaffirms that conclusion in this Order. Congress clearly expressed its intent that the freedom of choice provision create a specific, individual federal right by phrasing the provision "with an *unmistakable focus* on the benefited class;" here, individual patients eligible for Medicaid. *Gonzaga*, 536 U.S. at 284 (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 691 (1979)). Further, Congress expressly imposed an obligation on the states to guarantee this federal right. The states "must [] provide" individual freedom of choice among qualified providers, 42 U.S.C. 1396a(a)(23)(A), and "shall not restrict the choice" among qualified providers of family planning services, 42 U.S.C. 1396a(a)(23)(B). The right § 1396a(a)(23) creates is explicit and the states' obligation to provide for that right is unambiguous. The *Pennhurst* clear statement rule, as developed in *Blessing* and *Gonzaga*, is therefore satisfied. Individuals who are eligible for Medicaid thus have a right to receive medical assistance from the qualified provider of their choice under § 1396a(a)(23), and can enforce that right through a § 1983 cause of action.

### B. The Arizona Act Violates the Freedom of Choice Provision as a Matter of Law.

The remaining dispositive question in this Motion is purely a question of law: whether Arizona can limit the range of qualified Medicaid providers for reasons unrelated to a provider's ability to deliver Medicaid services without violating a beneficiary's right to have free choice of qualified providers. As the Court found in the Preliminary Injunction Order, the language of the Medicaid Act, canons of statutory construction, and the relevant legislative history all compel the conclusion that Arizona lacks that authority. A state may not restrict a beneficiary's right to select any qualified provider for reasons

- 7 -

1    wholly unrelated to the provider's ability to deliver Medicaid services.  There have been
2    no changes of law or fact since the Preliminary Injunction Order that would alter that
3    conclusion.  Plaintiffs are therefore entitled to judgment as a matter of law that the
4    Arizona Act violates § 1396a(a)(23).

5         As before, Defendants present a strained interpretation of the word "qualified" that
6    would include any reasonable criteria a state sees fit to impose, regardless of whether the
7    criteria relates to the ability to provide Medicaid services.  That interpretation contradicts
8    the plain meaning of the phrase "[providers that are] qualified to perform the service or
9    services required," which describes qualified providers as those providers that are
10   competent to provide the needed services.  42 U.S.C. § 1396a(a)(23).

11        Defendants' interpretation also is foreclosed in light of the narrow and specific
12   exceptions Congress provided to the freedom of choice requirement.  *See, e.g.*, 42 U.S.C.
13   § 1396n(b)(4).  Congress would not have included a broad guarantee of free choice
14   among qualified providers, subject to enumerated and well-defined exceptions, and then
15   vested in the states the authority to circumvent that guarantee for nearly any reason.
16   Section 1396a(p)(1), which allows states to exclude providers for a number of
17   enumerated reasons "[i]n addition to any other authority," is merely one such exception
18   to the freedom of choice guarantee.  Defendants argue that § 1396a(p)(1) grants states the
19   authority to define, for any reason supplied by state law, what makes a provider
20   "qualified."  Such an interpretation would render the remainder of the exceptions to the
21   freedom of choice provisions, in which Congress carefully set forth the circumstances in
22   which a provider can be excluded from the program, redundant.  *See, e.g.*, 42 U.S.C.
23   § 1396n(b)(4) (granting the Secretary authority to allow states to restrict choice of
24   providers for Medicaid beneficiaries only when the restriction "does not discriminate
25   among classes of providers on grounds unrelated to their demonstrated effectiveness and
26   efficiency in providing those services").  Congress would not have drafted the Medicaid
27   Act to make the specific instances in which the Secretary and a state could restrict choice
28

- 8 -

of providers redundant. Section 1396n(b)(4) does not, therefore, give the states plenary authority to disqualify an entire class of providers for any reason supplied by state law.

Defendants cite *Guzman v. Shewry*, 552 F.3d 941 (9th Cir. 2009), to support their contention that a state retains the authority to set any reasonable standards for participation in Medicaid. *Guzman* does not support Defendants' argument. In *Guzman*, the Ninth Circuit found that "states have the authority to suspend or to exclude providers from state health care programs for reasons other than those upon which the Secretary of HHS has authority to act." *Id*. at 949. As a result, *Guzman* held that a state has the authority to exclude a provider based on a pending criminal investigation as part of its authority to exclude providers from participating in Medicaid "for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity." *Id*. (quoting 42 U.S.C. § 1320a-7(b)(5)). That holding is entirely consistent with the Court's interpretation of § 1396a(a)(23). States retain the authority to set standards for participation in the Medicaid program, but only reasonable standards related to the ability of the provider to perform Medicaid services. A state may not restrict a beneficiary's right under § 1396a(a)(23) to select any qualified provider for reasons that have nothing to do with Medicaid services. Nothing in *Guzman* suggests otherwise. *See Planned Parenthood of Ind.*, 699 F.3d at 980.

As in the Preliminary Injunction Order, this conclusion is based on the language of the Medicaid Act and related regulations, basic canons of statutory construction, and the legislative history of the involved provisions. In the Preliminary Injunction Order, the Court further found that consistent agency interpretations were persuasive independent of the level of deference owed and therefore resolved any remaining doubt about the meaning of § 1396a(a)(23) in light of § 1396a(p)(1). Because the interpretation of those provisions in this Order and in the Preliminary Injunction Order is independent of the agency's interpretation, it is unnecessary to resolve the question of the level of deference to accord the agency in order to resolve this case. The Court's conclusion that Plaintiffs are entitled to judgment as a matter of law does not depend at all on deference to agency

interpretations. Those interpretations, which are persuasive because they were thoroughly considered, carefully reasoned, and consistent, simply confirm the Court's independent conclusion.

### C. There Are No Genuine Issues of Material Fact.

There are no material issues of fact in dispute in this case, only questions of law. Defendants contend that two issues of fact bear on this Motion: 1) Plaintiff Planned Parenthood Arizona, Inc. ("Planned Parenthood") provides only a small portion of the total Medicaid family planning services in Arizona; and 2) Planned Parenthood would be able to create a separate entity to provide elective abortion services and thereby avoid disqualification from the Medicaid program under the Arizona Act. Even assuming these facts to be true, these issues are not material because they could not affect the outcome of this case under governing law. *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1039 (9th Cir. 2000). The freedom of choice provision "guarantees to every Medicaid beneficiary the right to choose *any* qualified provider," unless an exception to the provision applies. *Planned Parenthood of Ind.*, 699 F.3d at 979. It is the Medicaid beneficiaries who enjoy this right. The Arizona Act would disqualify otherwise qualified providers from participation in the state's Medicaid program for impermissible reasons and thereby limit the choice of qualified providers for Medicaid beneficiaries. As a matter of law, the Arizona Act would therefore violate § 1396a(a)(23). That some providers may be able hypothetically to restructure themselves to avoid disqualification under the Arizona Act does not change the fact that the Act impermissibly impinges on the rights of Medicaid beneficiaries. The number of those beneficiaries a provider serves, or the quantity of Medicaid services for which a provider is responsible, is similarly irrelevant. These issues of fact may mitigate the extent to which a Medicaid beneficiary's right is violated, but the violation nevertheless remains. The Arizona Act violates the freedom of choice provision of the Medicaid Act precisely because *every* Medicaid beneficiary has the right to select *any* qualified health care provider.

Because A.R.S. § 35-196.05(B) impermissibly disqualifies a class of providers from the state's Medicaid program for reasons unrelated to provider qualifications, the Arizona Act violates 42 U.S.C. § 1396a(a)(23) as a matter of law.  As a result, Plaintiffs are entitled to summary judgment on Count I, which is sufficient to resolve the case in their favor and grant them all the relief they seek.  It is therefore unnecessary for the Court to address any of Plaintiffs' other claims.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 85) is GRANTED.

IT IS FURTHER ORDERED that the Parties file by February 14, 2013, a Joint Proposed Form of Permanent Injunction, or separate proposed forms.

Dated this 8th day of February, 2013.

_____
Neil V. Wake
United States District Judge